UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

DEBORAH SYLVESTER, individually and          :
as administratrix of the estate of MELVIN
SYLVESTER, deceased, KIMBERLY                :
SYLVESTER and WILLIAM SYLVESTER,
                                              :
                                                          **MEMORANDUM DECISION**
                          Plaintiffs,
                                              :           03 Civ. 8760 (JGK)(FM)
              -against-
                                              :
THE CITY OF NEW YORK, et al.,
                                              :
                          Defendants.
--------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

              In this civil rights action, the wife and children of Melvin Sylvester

(collectively, "the Sylvesters"), seek to recover damages as a consequence of his fatal

shooting by a New York City police officer.  Following the conclusion of discovery, the

Sylvesters have now moved to amend their Second Amended Complaint ("SAC"),

pursuant to Rules 15(a) and 21 of the Federal Rules of Civil Procedure, to add a new

defendant, Lieutenant Raymond Sanchez ("Lt. Sanchez").[1]  For the reasons set forth

below, the Sylvesters' motion is denied.

---
              [1]      The City also has cross-moved for partial summary judgment.  That motion is
pending before the Honorable John G. Koeltl, to whom this case is assigned.

1

II.    Background

   The shooting giving rise to the Sylvesters' lawsuit occurred on August 8, 2003.  (See Compl. ¶ 31).  This action subsequently was commenced on November 5, 2003.  (See Docket No. 1).  The defendants named in the Sylvesters' complaint were the City of New York, two named police officers, and a "John Doe" police officer who allegedly was the person who "assaulted, battered, and shot" Melvin Sylvester.  (See id. (Compl. ¶¶ 8, 11, 19)).  The defendants other than the John Doe defendant subsequently answered the complaint.  (See Docket No. 3).

   Thereafter, on March 8, 2004, Judge Koeltl signed a consent order submitted by the parties, which permitted the Sylvesters' original complaint to be amended to substitute Terrence Donnelly ("Donnelly") for the "JOHN DOE" defendant. (See Docket No. 5).  That same day, Judge Koeltl also adopted a Civil Case Management Plan ("Plan") which set April 16, 2004, as the deadline for the joinder of any additional parties and the filing of any amended pleadings.  (Docket No. 4).  The Plan further contemplated that, "except for good cause shown," all discovery would be completed by August 13, 2004.  (Id.).

   Following their receipt of the City's initial Rule 26 disclosures, the Sylvesters learned that four other police officers also were involved in the events surrounding Melvin Sylvester's death.  (See Aff. of Edward Sivin, Esq., in Supp. of Mot. to Amend Compl., sworn to on Sept. 28, 2004 ("Sivin Aff."), ¶ 8).  As a consequence, on

April 16, 2004, the Sylvesters served and filed their SAC, which added those individuals as defendants. (<u>See</u> Docket Nos. 7, 8). This pleading was filed within the deadline contemplated by the Plan. Once again, the City served and filed an answer on behalf of the named defendants. (Docket No. 9).

On May 10, 2004, this action was referred to me for general pretrial purposes. (<u>See</u> Docket No. 11). On August 12, 2004, I set a new deadline of October 1, 2004, for the completion of all fact discovery and expert witness disclosure. (<u>See</u> Docket No. 16). Pursuant to a subsequent order, Lt. Sanchez was deposed on September 17, 2004. (<u>See</u> Sivin Aff. ¶ 12). The Sylvesters contend that they did not know Lt. Sanchez's role "in the events that immediately followed the shooting" or those that took place over the following months before they took Lt. Sanchez's deposition. (<u>See</u> <u>id.</u> ¶¶ 11-12).

On September 28, 2004, the Sylvesters filed their motion to amend the SAC to add Lt. Sanchez as a defendant. (<u>See</u> Docket Nos. 20, 21). In their motion papers, the Sylvesters allege that Sanchez was "instrumental in first setting into motion an attempt to falsely and wrongfully portray the shooting of Melvin Sylvester in a manner that was likely to exculpate Donnelly and the [New York City Police Department ("NYPD")] from civil and criminal liability." (Sivin Aff. ¶ 12; <u>see also</u> Pls.' Mem. of L. in Supp. of Mot. to Amend Compl. ("Pls.' Mem.") at 3). In particular, the Sylvesters allege that Lt. Sanchez falsely claimed that he had recovered an open knife near Melvin Sylvester after the shooting and had heard Kimberly Sylvester admit at the scene that "Daddy had a

knife." (See Pls.' Mem. of L. in Partial Opp'n to Defs.' Mot. for Summ. J. and in Further

Supp. of Mot. to Amend Compl. ("Pls.' Reply Mem."), at 21; Sivin Aff. Ex. 4 (Proposed

Third Am. Compl.) ("Proposed TAC") ¶ 163). The Sylvesters contend that Lt. Sanchez

"conveyed this [false] information to a Grand Jury that was convened to investigate the

circumstances of the shooting." (Proposed TAC ¶ 163). In addition to adding claims for

relief against Lt. Sanchez, the Proposed TAC also seeks to impose Monell liability[2] on the

City of New York as a consequence of his actions.

III.     Discussion

         A.     Applicable Law

         Rule 15(a) of the Federal Rules of Civil Procedure provides that a party

may amend its pleading as of right before a responsive pleading has been served. Fed. R.

Civ. P. 15(a). Thereafter, the pleading may be amended "only by leave of the court . . .

[, but] leave shall be freely given when justice so requires." Id. Courts therefore usually

look favorably on requests to amend a complaint pursuant to Rule 15(a). See Conley v.

Gibson, 355 U.S. 41, 45-46 (1957) (amendment should be allowed "unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief"); see also Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123

---

[2]         See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

(2d Cir. 1991) ("when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests leave to file an amended complaint, that request should ordinarily be granted").

Here, in addition to adding a claim against the City, the Sylvesters seek to add a new defendant. An amendment to add a party to a civil suit is governed by Rule 21 of the Federal Rules of Civil Procedure, which permits their addition by order of the court "at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21; Hickey et al. v. City of New York et al., No. 01 Civ. 6506 (GEL)(FM), 2004 WL 736896, at *2 (S.D.N.Y. Apr. 5, 2004); Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909 (DLC), 2001 WL 58000, at *2 (S.D.N.Y. Jan 23, 2001). Thus, when a plaintiff seeks to add a party in accordance with Rule 21, leave of the court is required even if the defendants previously named have yet to answer.

In this case, because an answer to the SAC has been filed, the showing necessary to add a new party under Rule 21 is the same as that required by Rule 15(a) for any other proposed amendment. See Rissman v. City of New York, No. 01 Civ. 6284 (SHS)(DF), 2001 WL 1398655, at *1 (S.D.N.Y. Nov. 9, 2001). Accordingly, as the Supreme Court has observed in the context of Rule 15(a):

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should . . . be 'freely given.'

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  As the <u>Foman</u> court further stated, an

"outright refusal to grant the leave without any [of the above justifications] is . . . an

abuse of . . . discretion and inconsistent with the spirit of the Federal Rules."  <u>Id.</u>

      B.    <u>Proposed Claims</u>

      In their motion, the Sylvesters originally sought leave to amend their SAC

to add four claims against Lt. Sanchez and the City.  As the Sylvesters explained:

> The first cause of action, entitled Thirtieth Cause of Action,
> alleges essentially that Sanchez's actions in attempting to
> falsely and wrongfully portray the shooting in a manner that
> was likely to exculpate Donnelly and the NYPD from
> criminal and civil liability, constituted extreme and
> outrageous conduct in total disregard of a substantial
> probability of causing severe emotional distress to [the
> Sylvesters], and that this conduct actually resulted in severe
> emotional distress to [them].  The second cause of action,
> entitled Thirty First Cause of Action, alleges that Sanchez's
> actions deprived plaintiffs of their rights, privileges and
> immunities secured by the Constitution of the United States of
> America and of the State of New York, and their rights
> pursuant to 42 USC § 1983.  The third cause of action,
> entitled Thirty Second Cause of Action, alleges a <u>Monell</u>
> claim, ie. [sic] that Sanchez's actions were done pursuant to
> an official municipal policy or custom of the City involving,
> *inter alia,* the covering up of police malfeasance.  The fourth
> cause of action, entitled Thirty Third Cause of Action, alleges
> that Sanchez's actions represented a conspiracy among two or
> more employees of the City, which conspiracy deprived
> plaintiffs of their federal civil and constitutional rights, in
> violation of 42 USC §§ [sic] 1985.

(Sivin Aff. ¶ 13).

Following their review of the defendants' opposition papers, the Sylvesters agreed not to pursue their proposed Thirty-Second and Thirty-Third Causes of Action, which together allege that Lt. Sanchez participated in a racially-motivated conspiracy to cover up the facts of the shooting (in violation of 42 U.S.C. § 1985) for which the City has <u>Monell</u> liability. (<u>See</u> Proposed TAC ¶¶ 156-59, 170-73, 174-77; Pls.' Reply Mem. at 21 n.12). Accordingly, the only new claims for relief that the Court needs to consider are that Lt. Sanchez intentionally inflicted emotional distress upon the Sylvesters (the "IIED claim") and that he violated 42 U.S.C. § 1983.

1.    <u>IIED Claim</u>

In their Thirtieth Cause of Action, the Sylvesters allege that Lt. Sanchez and other police officers conspired to concoct a false story after the shooting of Melvin Sylvester as part of an effort to exculpate the defendants, hinder the due course of justice, and deprive the Sylvesters of their constitutional rights. (Proposed TAC ¶ 162). The Sylvesters further allege that Lt. Sanchez repeated his false accusations in January 2004 to a grand jury investigating the circumstances of Melvin Sylvester's death. (<u>Id.</u> ¶ 163). Finally, they allege that these actions "constituted extreme and outrageous conduct" which was undertaken "in total disregard of a substantial probability of causing severe emotional distress to [the Sylvesters]," and which had that effect. (<u>Id.</u> ¶¶ 164-65).

Under New York law, IIED claims are subject to a one-year statute of limitations. <u>See</u> N.Y. C.P.L.R. § 215 (McKinney's 2003); <u>Reich v. Reich,</u> 657 N.Y.S.2d

671 (1st Dep't 1997) (affirming dismissal of "so much of plaintiff's first cause of action for intentional infliction of emotional distress as is time-barred by the one-year Statute of Limitations"); <u>Misek-Falkoff v. IBM</u>, 556 N.Y.S.2d 331 (1st Dep't 1990) (stating that one-year Statute of Limitations applies to an IIED claim).  Therefore, to the extent that the Sylvesters' IIED claim against Lt. Sanchez arises out of events occurring during August 2003, the month of the shooting, it arguably is time-barred.  (<u>Id.</u>).  On the other hand, to the extent that the IIED claim arises out of Sanchez's January 2004 grand jury appearance, it is timely.

Even if a claim appears to be time-barred, the "relation back" doctrine may salvage it from dismissal.  <u>See</u> Fed. R. Civ. P. 15(c); <u>VKK Corp. v. Nat'l Football League</u>, 244 F.3d 114, 128 (2d Cir. 2001) ("If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."); <u>Gaines v. Gaston</u>, No. 92 Civ. 0643 (DNE), 1998 WL 574380, at *4 (S.D.N.Y. Sept. 8, 1998) (same).  Pursuant to Rules 15(c)(2) and (3) of the Federal Rules of Civil Procedure, an amended complaint relates back to the original complaint when:

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the

party to be brought in by amendment (A) has received such
notice of the institution of the action that the party will not be
prejudiced in maintaining a defense on the merits, and (B)
knew or should have known that, but for a mistake concerning
the identity of the proper party, the action would have been
brought against the party.

Fed. R. Civ. P. 15(c)(2), (3). There consequently are three requirements that a party

seeking to add a defendant to an existing action must meet in order for the new

allegations to relate back under Rule 15(c). "First, both complaints must arise out of the

same conduct, transaction, or occurrence. Second, the additional defendant must have

been omitted from the original complaint by mistake. Third, the additional defendant

must not be prejudiced by the delay." VKK Corp., 244 F.3d at 128.

Here, the SAC alleges a conspiracy to cover up and that the defendants

intentionally inflicted emotional distress. (See, e.g., Sivin Aff. Ex. 1 (Second Am.

Compl.) ¶¶ 81-84, 86-90, 114-17, 119-22, 143-46). Accordingly, to the extent that the

proposed new IIED claim against Lt. Sanchez is based on the same events, the first of

these three requirements has been met. There has been no showing, however, that the

failure to name Lt. Sanchez as a defendant previously was the result of a mistake, rather

than a lack of timely information concerning his role in the investigation following the

shooting of Melvin Sylvester. Moreover, there is no reason to believe that Lt. Sanchez

knew or should have known that he would have been named as a defendant at an earlier

time, but for a mistake on the Sylvesters' part. The relation back doctrine

therefore does not solve the statute of limitations problem that the Sylvesters face with respect to Lt. Sanchez's alleged misconduct on or shortly after the date of the shooting.

The New York courts also recognize a "continuing tort" doctrine, under which a plaintiff may "rely on wrongful conduct occurring more than one year prior to commencement of the action so long as the final actionable event occurred within one year of the suit." Shannon v. MTA Metro-North R.R., 704 N.Y.S.2d 208 (1st Dep't 2000). If that doctrine were to be applied here, all of Lt. Sanchez's alleged misconduct would fall within the one-year limitations period. However, there is no need to determine whether the continuing tort doctrine applies because the Sylvesters' IIED claim, even if timely, fails to state a claim for relief.

To plead a prima facie IIED claim, the Sylvesters must allege "([a]) extreme and outrageous conduct; ([b]) intent to cause or disregard of a substantial probability of causing severe emotional distress; ([c]) a causal connection between the conduct and the injury; and ([d]) severe emotional distress." Stuto v. Fleischman, 164 F.3d 820, 827 (2d Cir. 1999). The first of these elements requires the alleged misconduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Murphy v. Am. Home Prods. Corp., 461 N.Y.S.2d 232, 236 (1983) (quoting Restatement

[Second] of Torts § 46, cmt. d)); accord, Walsh v. Nat'l Westminster Bancorp., Inc., 921 F. Supp. 168, 174 (S.D.N.Y. 1995) (Koeltl, J.); Holwell v. N.Y. Post Co., 81 N.Y.2d 115, 121 (1993).

Whether the conduct alleged in the Proposed TAC meets this threshold is a question of law for the Court to decide. See Silberstein v. Advance Magazine Publishers, Inc., 988 F. Supp. 391, 392 (S.D.N.Y. 1997) (Kaplan, J.); Holwell, 81 N.Y.2d at 122; Harville v. Lowville Cent. Sch. Dist., 245 A.D.2d 1106 (4th Dep't 1997). The task of determining the quantum of facts that will entitle a plaintiff to proceed with an IIED claim is rendered more difficult by the clear divide between the high threshold established by the New York Court of Appeals in Murphy and Holwell and the facts of other, less compelling cases in which lower courts nevertheless have found IIED claims facially sufficient.

As Judge Newman noted in Bender v. City of New York, 78 F.3d 787 (2d Cir. 1996), the New York Court of Appeals has yet to sustain a single IIED claim, and certain Appellate Division cases also have taken a "restrictive approach." Id. at 790-91 (citing Herlihy v. Metro. Museum of Art, 633 N.Y.S.2d 106, 113-14 (1st Dep't 1995) (IIED claim cannot be based on false accusation that plaintiff made anti-Semitic remarks), and Andrews v. Bruk, 631 N.Y.S.2d 771 (2d Dep't 1995) (defendant's improper use of plaintiff's hospital records as part of effort to show that plaintiff had an affair with defendant's wife was "not to be condoned," but insufficient to state IIED

11

claim). In other cases, however, IIED claims have survived a pretrial motion despite facts which do not suggest that the defendant's conduct exceeded "all possible bounds of decency." See, e.g., Levine v. Gurney, 539 N.Y.S.2d 967, 968 (2d Dep't 1989) (summary judgment on IIED claim that defendant named as co-respondent in matrimonial action allegedly filed false police report against plaintiff denied because plaintiff faced "possible threat of imprisonment"); Flatley v. Hartmann, 525 N.Y.S.2d 637, 638 (2d Dep't 1988) (motion to dismiss IIED claim arising out of series of hang-up telephone calls by neighbor involved in boundary disputes with plaintiff properly denied); Mitran v. Williamson, 197 N.Y.S.2d 689, 691 (Sup. Ct. Kings County 1960) (denying summary judgment on IIED claim where defendant allegedly sent plaintiff an obscene photograph of himself and suggested that they meet for "immoral purposes").

In this District, in Frazier v. City of New York, 96 Civ. 3345 (HB), 1997 WL 214919 (S.D.N.Y. Apr. 24, 1997), the defendants sought the dismissal of an IIED claim that arose out of a physical altercation between the plaintiff and a New York City police officer. The dispute led to the plaintiff's arrest and imprisonment for two days on charges which later were dropped. Judge Baer denied the defendants' summary judgment motion, but described his decision as to whether the defendants' acts were sufficiently egregious to meet the IIED threshold as "a close call." Id. at *4.

In the course of determining that the motion should be denied, Judge Baer noted that the Second Circuit recently had upheld a jury verdict on an IIED claim under

similar circumstances in <u>Bender</u>.  <u>Id.</u>  <u>Bender</u> involved a plaintiff who was arrested for disorderly conduct and resisting arrest while she allegedly was participating in a demonstration at Tompkins Square Park in Manhattan.  78 F.3d at 789.  She claimed that a police officer assaulted her following her arrest and refused to give her a Desk Appearance Ticket, which led to her detention for 29-½ hours before her release.  <u>Id.</u>  Six months later all charges against her were dropped.  <u>Id.</u>  After a jury trial, the plaintiff was awarded a total of $300,700 on her false arrest, malicious prosecution, battery, and intentional infliction of emotional distress claims, $150,000 of which was attributable to her IIED claim against one of the arresting officers.  <u>Id.</u> at 790.  In its decision requiring a substantial remittitur, the Second Circuit observed, in <u>dictum</u>, as follows:

> The conflicting testimony created fact issues for the jury as to whether Officer Corpes's arm was injured by the act of striking Bender in the mouth and whether Officer Corpes falsely claimed to have been bitten and wrongfully initiated an assault charge against Bender. If the jury resolved both these issues in favor of Bender, as it apparently did, then New York might well regard the officer's actions as sufficiently outrageous to satisfy the conduct element of the emotional distress tort.

<u>Id.</u> at 791.

More recently, in <u>Gonzalez v. Bratton</u>, 147 F. Supp. 2d 180, 194-95 (S.D.N.Y. 2001), Judge Marrero concluded that various acts of harassment by police officials were sufficient to sustain a jury's verdict awarding a former police officer substantial damages on an IIED claim.  In arriving at that determination, Judge Marrero

cited cases such as <u>Bender</u> and <u>Levine</u>, which suggested that the conduct about which Gonzalez had complained was sufficiently outrageous to make out an IIED claim. <u>Id.</u> Thereafter, the Second Circuit affirmed the judgment below, rejecting the defendants' assertions regarding the IIED claim "substantially for the reasons provided in the district court's thorough opinion." <u>Gonzalez v. Bratton</u>, 48 F. Appx. 363, 365 (2d Cir. 2002). <u>See also</u> <u>164 Mulberry St. Corp. v. Columbia Univ.</u>, 4 A.D.3d 49, 56 (1st Dep't 2004) (IIED claim is "dismissable unless the claim arises as a result of a 'campaign of harassment or intimidation.'") (quoting <u>Nader v. Gen. Motors Corp.</u>, 25 N.Y.2d 560, 569, (1970)).

   In deciding whether the conduct attributed to Lt. Sanchez potentially gives rise to an IIED claim, the Court's task is to determine how the New York Court of Appeals would rule. <u>State Farm Mut. Automobile Ins. Co. v. Mallela</u>, 372 F.3d 500, 505 (2d Cir. 2004). In considering this question, the Court must give "proper regard" to lower state court decisions and may also look to decisions of federal courts applying New York law. <u>See</u> <u>Phansalkar v. Andersen Wienroth & Co.</u>, 344 F.3d 184, 199 (2d Cir. 2003) (quoting <u>Travelers Ins. Co. v. 633 Third Assoc.</u>, 14 F.3d 114, 119 (2d Cir. 1994)).

   Here, the only conduct on the part of Lt. Sanchez cited in the Sylvesters' Thirtieth Cause of Action relates to false statements that he allegedly made in an effort to exculpate Donnelly and other police officers. (Proposed TAC ¶¶ 162-63). Even if Lt. Sanchez repeated those allegedly false statements to a grand jury, it is apparent that his

conduct did not lead to the arrest or prolonged detention of anyone. In these circumstances, it seems apparent that the New York Court of Appeals would not consider the actions of Lt. Sanchez to be sufficiently egregious to make out an IIED claim. Moreover, many cases decided in this District impose a similarly high threshold with respect to the conduct that potentially will give rise to an IIED claim. See Ponticelli v. Zurich Amer. Ins. Group, 16 F. Supp. 2d 414, 420-23, 440 (S.D.N.Y. 1998) (Sweet, J.) (employer's continued verbal and sexual harassment of female employee did not rise to the level of conduct so outrageous as to sustain an IIED claim because "[t]he standard for extreme and outrageous conduct is extremely difficult to satisfy"); Silberstein, 988 F. Supp. at 392-93 (demotion and subsequent termination of plaintiff due to her pregnancy and the birth of her second child "insufficient to lift plaintiff's case over the hurdle established by the New York Court of Appeals"); Perry v. Burger King Corp., 924 F. Supp. 548, 553 (S.D.N.Y. 1996) (Owen, J.) (dismissing IIED claim brought by African-American plaintiff who was told that he could not use a restaurant bathroom because the franchise was trying to weed out "undesirables").

Additionally, insofar as the conduct complained of consists of Lt. Sanchez's allegedly false testimony before a grand jury, it is clear that he would be entitled to absolute immunity, even if the Court were to allow the Proposed TAC to be filed. See Briscoe v. LaHue, 460 U.S. 325, 330-32 (1983) (absolute immunity for allegedly

perjurious testimony is justified by the public interest in having police officers participate fully in the judicial process); White v. Frank, 855 F.2d 956, 960-62 (2d Cir. 1988) (same) (citing Briscoe).

For these reasons, the Sylvesters' application to bring an IIED claim against Lt. Sanchez is denied on futility grounds.

2.    Section 1983 Claim

In their Thirty-First Cause of Action, the Sylvesters allege that Lt. Sanchez violated Section 1983 by participating in a conspiracy to (a) cover up the facts surrounding the shooting of Melvin Sylvester and (b) deprive them of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. (See Proposed TAC ¶¶ 167-69; Pls.' Mem. at 4; Pls.' Reply Mem. at 21).

Claims arising under Section 1983 in New York State are subject to a three-year statute of limitations. Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 331-32 (2d Cir. 1997) (citing Bd. of Regents of S.U.N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)). "Such claims accrue when the plaintiff 'knows or has reason to know of the injury which is the basis of his action.'" Cole v. Miraflor, No. 99 Civ. 0977 (RWS), 2001 WL 138765, at *3 (S.D.N.Y. Feb. 19, 2001) (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)). Since the earliest events in this case took place on August 8, 2003, (see Compl. ¶ 17), the Sylvesters' Section 1983 claims are unquestionably timely.

Section 1983 does not itself create any substantive rights. It is, instead, merely a vehicle by which a person alleging a constitutional deprivation may assert a federal claim. Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). Accordingly, to recover damages under Section 1983, the Sylvesters must allege that a defendant acting under color of state law has deprived them of a right, privilege, or immunity guaranteed by the United States Constitution. 42 U.S.C. § 1983; Barnes v. City of New York, No. 96-CV-2702, 1998 WL 19485, at *4 (E.D.N.Y. Jan. 20, 1998).

In this case, there is no dispute that Lt. Sanchez was employed by the New York City Police Department and was working in that capacity when he engaged in the conduct ascribed to him. He therefore unquestionably was acting under color of state law. See, e.g., Bonsignore v. City of New York, 683 F.2d 635, 639 (2d Cir. 1982) (a police officer is acting under color of state law when his actions are "committed in the performance of any actual or pretended duty"); Martin v. Lociccero, 917 F. Supp. 178, 181 (W.D.N.Y. 1995) (Section 1983 liability may be found when a police officer "invokes the real or apparent power of the police department or performs duties prescribed generally for police officers"). The critical question consequently is whether the Sylvesters have adequately alleged a constitutional deprivation that entitles them to a recovery. I will consider this issue separately with respect to each branch of the Sylvesters' Section 1983 claim.

a.    <u>Cover-Up Conspiracy</u>

The Sylvesters first allege in their Section 1983 claim that Lt. Sanchez participated in an unlawful conspiracy to cover up the true facts concerning the shooting of Melvin Sylvester, in furtherance of which he gave false testimony to a grand jury. In seeking to justify this claim in their motion papers, the Sylvesters cite <u>McGarty v. Town of Carmel</u>, 997 F. Supp. 435 (S.D.N.Y. 1998). (<u>See</u> Pls.' Mem. at 16). There, the mother of a man shot by the police sought to amend her complaint to add a claim under Section 1983 alleging that four individually-named officers had "conspired to cover up evidence that they used excessive force." <u>Id.</u> at 437. Judge Barrington D. Parker, Jr., then a district judge, granted the motion to amend, reasoning that such a claim was viable even though the plaintiff eventually had filed a suit. <u>Id.</u> at 437-38. As Judge Parker explained, "it is not necessary for the plaintiff to show the effectiveness of the conspiracy in concealing constitutional violations before she can assert a claim for it." <u>Id.</u> at 437.

More recently, in <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002), the Supreme Court has distinguished between forward- and backward-looking cover-up claims. In the first category, which is not applicable here, plaintiffs seek redress with respect to obstacles to their access to the courts, such as inadequate prison libraries. 536 U.S. at 412-13. Because such problems can be ameliorated, the deprivation giving rise to the suit is not necessarily permanent.

The second category of backward-looking cover-up claims consists of cases which can no longer "be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases consequently look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unattainable." Id. at 414 (footnotes deleted). In this action, because the wrongs that the Sylvesters seek to address can no longer be corrected, it is clear that their Section 1983 cover-up claim is a backward-looking claim.

Turning to the elements that must be pleaded in order to make out such a claim, in Swierkeiewicz v. Sorema, N.A., 534 U.S. 506, 513-15 (2002), the Supreme Court reaffirmed that, with limited exceptions (such as fraud cases), the simplified pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure apply to all civil suits. Consequently, a person seeking to bring a Section 1983 cover-up claim need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In Christopher, the Supreme Court stated that this requires that a person asserting a backward-looking denial of access claim "identify a "remedy that may be awarded as recompense but [which is] not otherwise available in some suit that may yet be brought." 536 U.S. at 415. As the Supreme Court explained, by requiring this level of detail, a court can ensure that constitutional claims are not needlessly reached in circumstances where a plaintiff can secure complete relief by litigating other, simpler claims. Id. at 415, 417.

Here, the proposed Thirty-First Cause of Action alleges that Lt. Sanchez joined a conspiracy to cover-up the defendants' excessive use of force, but is utterly silent as to any underlying claim for relief that the Sylvesters have been unable to bring or any remedy that has been diminished or lost by virtue of a delay attributable to the cover-up. (See Proposed TAC ¶¶ 167-69). Moreover, because the SAC itself contains nearly thirty claims for which the Sylvesters seek substantial money damages, there is no reason to assume that there is some additional claim or remedy that was available to the Sylvesters at an earlier time but which has now been lost or compromised as a result of Lt. Sanchez's actions.

It also is difficult to discern the constitutional right that the Sylvesters contend was infringed through the cover-up conspiracy. To the extent that the Sylvesters contend that Lt. Sanchez' allegedly false testimony before the grand jury resulted in its failure to bring charges against Donnelly, they clearly do not have a constitutional right to secure his (or anyone else's) indictment. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); see also Matter of Appointment of Indep. Counsel, 766 F.2d 70, 75 (2d Cir.1985) (quoting Linda R.S.). Similarly, to the extent that the proposed Section 1983 claim is based on the false statements themselves, the Sylvesters do not have a constitutional right to be free from non-defamatory statements. See Pizzuto v. County of Nassau, 240 F. Supp.2d 203, 209 (2d Cir. 2002) (granting summary judgment

in favor of defendant in an action arising out of the beating death of plaintiffs' son because "a parent has no constitutionally-protected liberty interest in preserving intimate family relationship with an independent adult child who lives separately from his parents").

For these reasons, the Sylvesters' Thirty-First Cause of Action fails to state a claim to the extent that it seeks damages based on Lt. Sanchez's alleged participation in a conspiracy to cover up the true facts concerning the shooting of Melvin Sylvester.

        b.    <u>Denial of Substantive Due Process</u>

The other branch of the Sylvesters' Section 1983 claim alleges that they were denied substantive due process. (Proposed TAC ¶¶ 167-69). As Judge Lynch observed recently in another case involving the allegedly wrongful shooting of a civilian by a New York City police officer, a "substantive due process claim is only appropriate where governmental conduct 'shocks the conscience' and transgresses the 'decencies of civilized conduct.'" <u>Hickey v. City of New York</u>, No. 01 Civ. 6506 (GEL), 2004 WL 2724079, at *18 (S.D.N.Y. Nov. 29, 2004) (quoting <u>Rochin v. California</u>, 342 U.S. 165, 172-74 (1952)). Moreover, to give rise to a substantive due process claim, the conduct must ordinarily be "intended to injure in some way unjustifiable by any government interest." <u>Id.</u> (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998)). Given

these stringent requirements, it is not surprising that the doctrine of substantive due process is rarely used. See Kelly v. Rice, No. 04 Civ. 7770 (CM), 2005 WL 756811, at *4 (S.D.N.Y. Mar. 4, 2005).

In Hickey, Judge Lynch found that the officer who fired the shot may have acted recklessly, but had "law enforcement goals in mind" when he made his "split-second decision." Hickey, 2004 WL 2724079, at *18. Although Judge Lynch acknowledged that the officer might, in fact, have made the wrong choice, and therefore used excessive force, he held that there was no violation of substantive due process with respect to a member of the victim's family who was in direct proximity to the victim when the shooting occurred.

As in Hickey, the Sylvesters' substantive due process claim against Lt. Sanchez arises out of a shooting. Moreover, the Proposed TAC alleges that Sanchez was the ranking police officer on the scene at the time of the shooting. (¶ 161). Nonetheless, unlike the plaintiffs in Hickey, the Sylvesters do not allege that Lt. Sanchez did anything wrong with respect to the shooting itself. Indeed, the only allegation against Lt. Sanchez with respect to the Sylvesters' substantive due process claim is that "following the shooting of Melvin Sylvester," he conspired with other police officers to falsify certain facts relating to Melvin Sylvester's alleged possession of a knife. (Proposed TAC ¶¶ 162-63, 168) (emphasis added). As was true of the Sylvesters' IIED claim, such conduct, if shown to have occurred, would unquestionably be improper, but cannot fairly be said to

exceed all bounds of decency.  See Smith ex rel. Smith v. Half Hollow Hills Cent. Sch.,

298 F.3d 168, 173 (2d Cir. 2002) ("The protections of substantive due process are

available only against egregious conduct which goes beyond merely offending some

fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal

and offensive to human dignity as to shock the conscience."); United States v. Rahman,

189 F.3d 88, 131 (2d Cir. 1999) (the "paradigm examples of conscience-shocking

conduct are egregious invasions of individual rights," such as in Rochin, where a police

officer broke into a suspect's bedroom, forcibly attempted to pull capsules from his

throat, and pumped his stomach without his consent); Higazy v. Millennium Hotel and

Resorts, 346 F. Supp. 2d 430, 451 (S.D.N.Y. 2004) (Buchwald, J.) (federal agent's threats

to harm the family of "9/11" terror suspect did not "shock the conscience" and were

insufficient to make out a substantive due process claim); Bryant v. City of New York,

No. 99 Civ. 11237 (LMM), 2003 WL 22861926, at *7 (S.D.N.Y. Dec. 2, 2003)

("Substantive due process protects individuals against government action that is arbitrary,

conscience-shocking, or oppressive in a constitutional sense, but not against government

action that is incorrect or ill-advised.").

       For these reasons, the Sylvesters have not stated a legally sufficient

substantive due process claim against Lt. Sanchez.

c.    Municipal Liability

The Thirty-Second Cause of Action in the Proposed TAC sought to impose liability against the City on a Monell theory.  (See id. ¶¶ 171-72) (alleging that Sanchez's actions were undertaken "pursuant to an official municipal policy or custom of the City . . . involv[ing] the covering up of police malfeasance, the inaccurate and negative portrayal of the victim . . . , and the inaccurate portrayal of the incident in a manner that [was] intended to . . . exculpate [Donnelly] from criminal and civil liability").  In their reply papers, however, the Sylvesters expressly withdrew their motion to amend "to the extent it seeks . . . to add a 'Monell' cause of action."  (Pls.' Reply Mem. at 21 n. 12).

Notwithstanding that concession, the Sylvesters state in their Proposed TAC that both the Thirtieth and the Thirty-First Causes of Action are being brought against Lt. Sanchez and the City.  (Proposed TAC at 22, 24).  However, the Sylvesters have abandoned their contention that the City has Monell liabilty for the actions of Lt. Sanchez, and have failed to allege any other factual or legal theory which would entitle them to recover damages against the City based on the actions of Lt. Sanchez.  As a matter of law, the City also cannot be held liable on the theory that it conspired with Lt. Sanchez (or any of the other individually-named defendants) to deprive the Sylvesters of their constitutional rights.  See, e.g., Nat'l Cong. for Puerto Rican Rights v. City of New York, 75 F. Supp. 2d 154, 168-69 (S.D.N.Y. 1999); Burrell v. C.U.N.Y., 975 F. Supp. 398, 414 (S.D.N.Y. 1998).

Accordingly, to the extent that the Sylvesters' still seek leave to bring their Thirtieth and Thirty-First Causes of Action against the City, their motion must be denied.

IV.     Conclusion

The Sylvesters' motion to amend their Second Amended Complaint to add a Thirtieth and Thirty-First Cause of Action against Lt. Sanchez, (Docket No. 20), is denied.

SO ORDERED.

Dated:     New York, New York
           May 20, 2005

                                        FRANK MAAS
                                   United States Magistrate Judge

Copies to:

Honorable John G. Koeltl
United States District Judge

Edward Sivin, Esq.
Sivin & Miller, L.L.P.
(212) 406-9462 (fax)

Jennifer A. Rossan, Esq.
NYC Law Department
(212) 788-9776 (fax)

Walter A. Kretz, Esq.
Seiff, Kretz & Abercrombie
(212) 371-6883 (fax)